Good morning, Your Honor. Richard Holcomb here on behalf of the plaintiff, Christopher Baker. I would like to reserve five minutes, although I don't know if I will use my entire time because I certainly have nothing to add to the Second Amendment analysis presented by — May I ask the — Oh, fine. Thank you very much. The clock is now ticking. Go ahead. Oh. All right. But there are some nuances with Hawaii's statute. I think one of the — So you're at a — Well, I'm very much — So what we're looking at is an abuse of discretion, correct? And, I mean, obviously, if the court gets the law wrong, that's how you argue. That's an abuse of discretion any way that you look at it. But just as you sat here and you listened to — let's just assume that we had some excellent arguments and counsel have persuasively — you know, they've made decent points on both sides. If you're looking at abuse of discretion and both sides are telling us that they need help from the courts, you know, how could the court have abused its discretion when you don't — there isn't anything exactly on point regarding what the law is in this area? Well, Your Honor, I think it goes back to the point Mr. Gurra was making about Heller. And I think that the court's reading of Heller in this case and in apparently the others was unfair. My position has been all along, and as I told Judge Kaye when we were arguing this, I believe that the core issue of whether there is a right outside the home was decided in Heller. And then obviously made applicable to the States through McDonald. Several courts — we have cited that some of the district courts are making that tough decision. Right. But they're doing it in a different context. I mean, do you have a case where preliminary instruction has been granted? I do not, Your Honor. Other than — You have to admit that, and following up on Judge Callahan's question, your case is in a completely different posture than the other two cases we heard this morning, right? That's correct. It is. You could still win your case but lose the preliminary injunction. That's correct. So tell us why you think you need a preliminary injunction rather than letting the case go to its conclusion. Well, Your Honor, I believe that, A, it's a fundamental right through Heller. B, what the court did wrong in our view — But you believe that. But we've heard arguments on both sides. So what we're struggling with, I think, on the preliminary injunction is both sides are telling us what the level of scrutiny should be, but there isn't an exact answer. Both sides are arguing what did Heller say in terms of the scope. And if they're both making, you know, credible arguments, how can this particular district judge be faulted and said to have abused his discretion when, you know, the law hasn't been answered to the extent that you're asking us to answer it? Right, Your Honor. I understand your point. Our position is that the recognition that it applies outside the home, the remainder of the factors of whether or not the preliminary injunction should issue do fall into place. So, for example, irreparable harm. We assume when there's a fundamental right at stake that the plaintiff is harmed irreparably without the issuance of the preliminary injunction. The balancing of interest. The government has no interest in enforcing this broad prohibition, which is much broader than apparently the California law, although they have apparently changed that to include the open so that you, this Court may revisit that. And then the balancing, the public interest. Justice Scalia very artfully wrote at the end of Heller that those, that balancing test has been done for us. And the answer is not to rebalance or to ignore the Second Amendment, but if people aren't happy with it, they can repeal it. So the question is, if the trial judge got the law wrong, that takes care of the problem. But what would be very helpful here would be, compare the State statutes, your Hawaii. The other two cases were California. And the precise role of the sheriff in your case compared to the sheriff in the other two. Very well, Your Honor. One of the first things that I would point out about Hawaii is that this is an absolute ban on the bearing of arms at all. There are very limited exceptions in the statute that allow us to transport a firearm in a locked container. One nuance that I wanted to observe, unlike California law, there is no self-defense exception to that. In other words, there is no permission to, if you are being carjacked, as Judge Callahan had noted, for you to stop and unlock your bag. I mean, obviously, people would probably do that. I don't know whether they would be prosecuted for that or not. But the interesting thing that I find about Hawaii law is that if we are, and we do accept that the States could regulate sensitive places in some reasonable time, manner, and scope regulations. The interesting thing about Hawaii law is that apparently if you are driving down Baratania Street where the Honolulu Police Department is located, and your destination is the Honolulu Police Department, Baratania Street is not a sensitive place. However, if you turn onto Ward Avenue to use the bathroom at the Jack in the Box, now you have committed a Class B felony. So based on your destination, what was a non-sensitive place now becomes a sensitive place. It just doesn't make sense to me. Well, it seems that your client has possibly, you know, I feel like he sort of stretched some of the interpretations about what the law is. So maybe, as Judge O'Scanlan was trying to get you to focus on that, because I think that Baker is contending that Section 134-25A generally prohibits him from carrying a loaded handgun in public, and he reasons that the Section 134.5 operates to exempt certain weapons from the carrying ban when they are used at target practice, but because it doesn't expressly exempt handguns from this prescription, he concludes he cannot legally engage in handgun target practice at a firing range. It seems that he sort of engages in some hyperbole there, because from what I can tell, the defendants have not adopted his interpretation and have instead produced evidence that not only are individuals permitted to fire handguns at target ranges, such target shooting currently takes place at municipal range and three other private indoor ranges. So I'm not sure that, I guess, you know, Judge O'Scanlan is trying to tell you, okay, what's the gist of the statute here, and it seems to me that there seems to be some disagreement between you plaintiffs and defendants, and it seems that plaintiff might be sort of overstating some of these restrictions in terms of how the defendants are interpreting it. Very well, Your Honor. And reading the statute, basically the prohibition is that you are prohibited from transporting and bearing in all circumstances and transporting except to these specifically delineated areas. And there is an exception to the bearing prohibition that seems to apply only to long guns. Now, there is no exception, therefore, for handguns. The court had posed the question, how does Mr. Baker have standing if we agree with your statutory interpretation to challenge that? And what I had assumed was that the court was getting to the San Diego Gun Rights Committee standing issues, and that is the imminent threat of prosecution. I would have to concede that there is no imminent threat of prosecution. And, in fact, I would also concede that Mr. Baker has used those ranges and uses them regularly and does fire handguns. But the reading of the statute, the point that I think it was originally raised was to show just how broad it is if you are to read just the plain language of it. And the only- And you're talking about the entirety of 134? Well, I'm talking about- In your complaint, you've asked for probably nine or ten sections of Hawaii law to be declared unconstitutional. Well, read together, Your Honor, I think that they create an absolute ban on the bearing of firearms. And all- So you want them all declared unconstitutional? Well, alternatively, we had asked that Mr. Baker be issued his permit. So yes, we did- we kind of did backwards what Mr. Gurra did. We said, first, we would like you to prohibit the enforcement of these overreaching bans. And then, alternatively, if you don't want to do that, then we would ask that Mr. Baker get his permit. Well, I mean, that's- again, I get back to the procedural posture, and I was checking up on your complaint because I wanted to make sure I had it correctly. But when the district court's looking at a preliminary injunction, you've reached- asked for the sweeping relief. And Hawaii says, look, he's wrong about the interpretation of the law. We do allow all these things. Then, it seems to me, it's hard to say that the district court got it wrong in terms of saying, let's let the case go forward, let's find out exactly what the policies are and how it's being enforced as applied to the client. Well, again, Your Honor, we have to abide with the position that the district court did not recognize bearing outside the home as a fundamental right. I take your point on that. Yeah. What would be the easier thing for me to understand is, what would this court have to hold? What issues would it have to reach in order for you to prevail? Well, first of all, you would have to declare a right to bear arms outside the home. Secondly, you would have to recognize that the Hawaii's statutory prohibitions breach that right. And then, thirdly, the only exception within the law where Mr. Baker could then bear arms is through the 134-9 licensing. And that applies only in an exceptional case. And I am unaware of any fundamental right where a citizen can only exercise that if his is an exceptional case above and beyond everyone else's, depending on how you read the comment. Doesn't that kind of turn facial challenges, facial challenge analysis on its head? I mean, if you're mounting a facial challenge, you've got to show there's no possible circumstance. And you're saying, well, I could fit into exception, but that doesn't count. Okay. Well, that could be, Your Honor. But what we had specifically challenged for Mr. Baker was the response to his application where they say, you haven't shown, you, Mr. Baker, specifically haven't shown sufficient justification. I get that part of your challenge. The rest of it's at this stage, maybe. But to get through the analysis, I mean, in my view, those are the steps you have to take, is recognize the right, Hawaii's law is overbroad for that right, and thirdly, this exceptional case, exception, if you will, just is not adequate or sufficient. Let me ask you this. If the case is still going on, I assume, did Judge Kay put a stay on the case while this was on appeal? We did, Your Honor. We stayed it until this decision. And what do you anticipate happening in the district court in both events? If we affirm Judge Kay and say you didn't abuse his discretion, what's next in the litigation? And if we reverse, what do you think next? If you could just give me the paths that you see for the district court litigation. Okay. There would be probably some discovery. The defendants have indicated a desire to depose Mr. Baker and maybe another witness or two. Most of the evidence that I think we need is already in the record by way of admission. I mean, we pretty much agree on the facts. So the next real step would be summary judgment. Counsel, on the Monell portion of the order that we filed recently, do you have a response on the effect that the lack of State dependents have in this case? Yes, Your Honor, I do. Monell, as I understand it, well, what Monell has become, as I understand it, is a defense that a defendant could raise. And this court, in fact, has found waiver when they did not raise it timely. And that's in Kelly v. City of Oakland, 198F3779. In this case, not only did they not raise Monell as a defense, but Judge Kay had quoted them in his opinion. He says, City defendants assert that HPD cannot be sued because it does not exist separate in part from the municipality and does not have its own legal identity. That's in the record of 227. As far as Kay Aloha, the City said it's duplicitous, unnecessary, and should be dismissed. And any allegation of unlawful policy or custom against Kay Aloha in his official capacity, quote, would necessarily run against the City. So they're taking the exact opposite view rather than raising Monell as a defense. Secondly, we had filed a supplemental authority where the City had specifically granted the authority to the Chief and every other head of an executive agency to promulgate these rules and policies. Now, Chief Kay Aloha is the final person, both by the statute and the City leaves him to do what the statute tells him to do, but the fact is he hasn't even adopted the policies that he was supposed to adopt. But nevertheless, the City has conferred that authority upon him specifically by ordinance. And, Your Honor, I see that my light is yellow. Should I continue? You have three and a half minutes left, Counsel. You can keep them for very well. You may save them. Thank you. All right. We'll hear from the County. Ms. Van Aken, is that right? Yes, Your Honor. Christine Van Aken for the City and County of Honolulu and Chief Kay Aloha. May it please the Court. The State has a profound interest in whether and how people carry guns in public, not only because of the possibility of armed mayhem, but also because the State has reason to believe that where people are carrying guns in public spaces, the character of those spaces changes and there may be more likely for people to feel fear or suspicion in being in a public place where they know there are guns. So the State has some very strong interests here. And the strength of these interests militates in favor of lesser scrutiny for restrictions on carrying arms in public. Now, I'm not going to argue today that Heller simply doesn't apply, the right recognized in Heller simply doesn't apply outside the home at all. You know, I don't see a textual basis for that. But what is very clear is that the Supreme Court did indicate in Heller that the right is at its apex inside the home. And, moreover, the Supreme Court in Heller indicated that the strength of the State's interest can change the way we view the Second Amendment right. So long as the right itself is identified. And you heard Mr. Clement, for example, say that the right is for self-defense and it's a fundamental right. So whatever the interest of the city and county is, it has to be adjusted in the context of a fundamental constitutional right. So how do we get there? Where do the lines cross? Your Honor, I seem to hear you say that it's less fundamental outside the home than inside the home. Your Honor, yes, I will submit that that's true and that Heller makes that clear. The right is most acute in the home and it can be regulated in other places. Okay, but does that really change the right? It would seem to me that it doesn't change the right, it just changes when you're doing whatever analysis. Your Honor, I think that the nature of the right does change when you leave the home. And that's because, I mean, we know that from history. We know that many states at many periods of time in our history have restricted public carrying, have restricted open carrying, have restricted concealed carrying. We know that at the time of the founding, three states adopted the Statute of Northampton, which said that you can't... Does that change the right or does it just allow the government to up its interest? Your Honor, I'd suggest it changes, it attenuates the individual's interest in bearing arms in public and it strengthens the state's interest in being able to regulate the bearing of arms in public. But if the right is to self-defense, to bear arms in self-defense, then it really doesn't matter, does it? Where this is carried out? Your Honor, let me give you the example of the post office. This is a government building and Heller tells us that the sensitive places doctrine, restrictions on guns in sensitive places are presumptively lawful, and that government buildings are among those. So if the right... If it is a courthouse, the post office may not be good because there's that saying going postal. Well, that's my point, Your Honor, that's my point. In many government buildings, you don't have to undergo a weapons check to enter the building. Nonetheless, Heller tells us that that's a sensitive place where the right can be abrogated entirely. But that's not this case. This case deals with the issuance of permits. Yes. And obviously, even if you have a permit, you can't come into this building without going through the magnetometer and one of our court security officers will say, thank you very much, you leave your gun right downstairs and you can't bring it into the building. And there's no problem with that. But here we're talking about a permit to be issued by the local government in the first place. Yes. Yes, Judge O'Scanlan. And but the sensitive places doctrine tells you that in some places, the government's interest is much higher in keeping guns out of those places. And so therefore, we don't even subject that to any kind of constitutional scrutiny. Right. So taking that, how do you apply it to this particular case? So in this case. And how would we analyze it? The test is blank. How would you fill in the blank? Your Honor, I'm not suggesting that the entire state of Hawaii or the entire city and county of Honolulu is a sensitive place. So it's not presumptively lawful. We don't get a free pass. But I'll suggest that intermediate scrutiny is the best way to analyze this because where the government has a strong interest, that can inform the nature of the test itself. And so here, Hawaii has a compelling interest in public safety and a compelling interest in maintaining the character of its public spaces. So it's strict scrutiny in your home. And the second you step outside your home, it changes to, even though the right still is the right to self-defense, if the right is the right to self-defense, then it just automatically becomes intermediate scrutiny? Your Honor, Heller tells us that the right is most acute inside the home and categorically rejected. Well, it kind of, it identified a few areas where it said, okay, we're not saying you can't do that. But it didn't say the second you step out the door. It didn't say that, but it said the right is most acute in the home. And so it has to be that the protections are greater in the home. So your rule is, though, the second you go out your door, it becomes intermediate scrutiny? Well, the state has very strong interest. Well, is that your rule or no? Yes, yes. Or is it, or is there kind of an area where it just becomes intermediate scrutiny? Is there, or is the door? Your Honor, in public. In public. So I wouldn't argue door. After you get off your property. When you get off your property, it's intermediate scrutiny any time, anywhere. Yes, Your Honor. Yes, Your Honor. So you've read Judge O'Scanlon's opinion in NORDAC 5 and Judge Gould's concurring opinion. Do you believe, or do you prefer any of the two analysis? And if so, tell me why. Your Honor, I think that the Kachowski court was right that if there. I guess there's a third answer now. Well, that if there's a right to carry, if the Second Amendment does apply outside the home and allows carrying of firearms, then burdening that is a substantial burden. But that doesn't answer the question of what level of scrutiny you apply. That just tells us that prohibitions that don't rise to the level of a substantial burden aren't subjected to scrutiny at all. So here I would say prohibiting guns, even if this court said prohibiting a person in Hawaii from carrying guns outside his or her home is a substantial burden, nonetheless intermediate scrutiny should apply because of the strength of the public spaces. And so if intermediate scrutiny should apply, the court should hold that this is a permissible restriction. Now, what Hawaii has done. Is that the only conclusion from intermediate scrutiny? Could you apply intermediate scrutiny and come out the other way? Your Honor, I think in this case, I don't think intermediate scrutiny is an outcome determinative test. I think that's actually one of the advantages. I mean, strict scrutiny has been described as strict in theory and fatal in fact. In intermediate scrutiny, the state actually must have good reasons and must demonstrate a relationship between its reasons and its methods. So I don't think that that test is outcome determinative. Here, however, Hawaii's law passes intermediate scrutiny. And that's because Hawaii has an interest in reducing the number of guns in public and requiring people to make a minimal showing that they have reason to fear injury to person or property, bears a connection, advances that interest in reducing the number of guns in public, and ensuring that only those people who have a demonstrated need for them have them and use them. Well, they have an interest in reducing crime, but I'm just not. But when you pit that against that their interest is to reduce crime, and if you assume the other person's interest is the right to self-defense, does the interest to reduce crime always is the only solution to reduce firearms? I don't know if that's the – I'm sure there are many solutions to reducing crimes besides reducing the number of firearms in public. But this is – there is a demonstrated relationship between the number of – the availability of firearms and crime. And Hawaii certainly made a reasonable policy judgment in deciding that reducing the number of firearms in public would reduce crime. And so – Let me ask you this, though. The posture of this being a preliminary injunction, does that – is that affect the analysis here? Your plaintiff's counsel or appellant's counsel seems to say that they still should win because it's such a clear violation of the law. But if you sat here for the last couple of hours, as we've all sat here, and assuming that you don't think that everyone that got up is crazy, that there have been some fairly credible arguments made from two different perspectives, does that affect the position the judge was in on abuse of discretion? Your Honor, I think if this Court concludes that, you know, strict scrutiny applies or bans on firearms outside the home or categorically invalid under Heller, that I think it is likely that this case would be reversed because of the way that appellate courts treat law and – and an error of law is abuse of discretion. But – so – so I'm not suggesting that the Court should simply sort of apply a qualified immunity analysis, and because there was no settled law at this point, there couldn't have been an abuse of discretion. I think that if the Court concludes that the judge got the law right, however, then plainly – plainly there was no abuse of discretion here. I want to go back for a moment to Hawaii's predictive judgments. Hawaii has made a judgment that those people who could show – who could – who could show that they should – have some reason to fear injury to person or property are those who can be permitted to carry a firearm in public. So what's wrong with Mr. Baker's claim that he's a process server and therefore he's subjected by the nature of his work to threats of violence? Well, Your Honor, the evidence for that was extremely minimal. There was – there were two police reports of the record. One had nothing to do with his being a process server. It was a dispute with a neighbor. Another was an instance where he and someone at a residence where he tried to serve process got into a verbal altercation and, you know – But the job itself inherently – I mean, some jobs inherently, as opposed to – you know, there would be some – you know, say I'm a kindergarten teacher. All right, the likelihood of the five-year-olds trying to overtake me probably isn't that great. But as a process – Have you seen five-year-olds? These days, Your Honor? Yeah. But a process server, you have to serve – you're serving people with papers that they're not going to be very happy to see. You have to go on their property. You have to knock on their doors. Sometimes you have to – you know, you have to lie in wait so that you can catch them. Isn't the nature of that work without – do you have to wait for a specific confrontation? I mean, the nature of the work seems to me – it wouldn't be a job I've ever won, trust me. You know, it seems to be a little bit heightened. And it's not like driving an armored car with a lot of money, but it is – does seem a little more inherently dangerous than being a kindergarten teacher. So two points about that, Judge Callahan. One is that that just wasn't the judgment of – that's a fact question. And it wasn't the judgment of Chief Kealoha that this was a particularly dangerous profession. There's a declaration in the record from Major Nita that he isn't aware of any other process server who has applied for a concealed weapons license, that he's not aware of any greater trends towards violence against process servers. So that's just not borne out by the record, that this is an especially dangerous profession where people need to carry guns. Counsel, you heard the example earlier of the merchant who's taking money to the bank or someone who is in the diamond jewelry business and is carrying very, very valuable jewelry. And the presumption was in those two cases, a permit would be given. Would that be true also in Honolulu? Your Honor, I'm – I know that people engaged in public protection are – can receive permits for open carry. So I think, for example, someone whose job it is to, you know, drive a Brink security truck, and I think that person would probably fall under the 134-9B provision allowing open carry. But that's not the case here. And – But I'm trying to find out what your dividing line here is. Again, if the fundamental right is to self-defense, wouldn't it be extremely important if you were carrying money to the bank in a very dodgy area that you should be able to have some self-defense? Well, and Your Honor, what I indicated was that I think that Hawaii would allow where you're – where you're someone who's engaged in a public protection profession, even if you're not a police officer, if you're a security guard or the like, then you do obtain. Yeah, but what's the rationale to have a security officer within the rule, but a process server and a merchant with lots of money being carried to the bank? What's the difference? Your Honor, it's a judgment about the likelihood of needing a weapon in self-defense and where someone can show a particularized need that they can have the license in Hawaii. But, you know, Heller – Heller at least impliedly approves the idea that the state can make predictive judgments because Heller says that the ban on felons having weapons is presumptively lawful. And what that is, is that's a – that's a judgment by the state that where someone has abused – really violated the law, didn't – not necessarily used violence or abused a weapon, but just violated the law at the level of a felony, that that person can no longer be trusted with a gun. That's a predictive judgment. And it may be right in many cases. It may be wrong in some cases. But that doesn't mean that the state can't make the judgment. So here, what Hawaii has done, it's chosen a reasonable method to advance its interest of reducing the number of dangerous weapons in public by saying that we think that people showing some sort of particularized reason is a pretty good predictive judgment for whether they're going to need a weapon. And so that – that's all that Hawaii needs to show to survive strict – or to survive a criminal case. Well, if Hawaii needs to show more than that, it has to be able to show that this policy advances the goal. And I just don't see how restricting the number of weapons advances the goal necessarily. Your Honor, there are – there are many empirical studies that show that there's an association between the prevalence of firearms and firearm injury and that it sort of is an arms race, if you will, that criminals are more likely to carry guns if they think their victims might be armed. But criminals aren't being issued permits. Right. At least I don't believe they are. And if their victims are issued permits, then they're – then the criminal is more likely to come with a gun, too, if they expect that they're – and I'm not saying that this is – I'm not suggesting that there's not – Well, if the victim gets a permit, too, the victim probably has a little more of a chance of surviving a criminal attack, too. Your Honor, that is – that is – with respect, that is not what the empirical evidence that Hawaii relied on shows. And I understand that there is a – there's a live policy and social science debate about this, but legislatures – Well, but could you say in the home? I mean, I think there probably is – there is some indication, and some people make this decision, that if you're really – if you pull – you know, if you pull a gun in the home on someone that breaks into your home, you might be more likely that they disarm you, that they shoot you with your own gun, all of those things. But you have to concede at this point, after Heller, that doesn't give you any less right to have that gun in the home. Yes. It's just – it's a factor – that evidence is something that you as an individual consider. Do I want to have a gun, and am I going to be safer in my home? But Heller absolutely says, you can have that gun. Yes. So if the right goes outside the home, you seem to be extending, you know, your empirical evidence and your judgment as an entity, saying, well, you know, it really – even though you may have the right to defend yourself, using a gun isn't the best way to defend yourself, because our studies show that it's more likely that the criminal's going to take it from you and use your own gun on you, and all of those things. And so I'm not sure how you can do that. If intermediate scrutiny applies, then Hawaii plainly has more latitude to regulate outside the home than they do inside the home. And so then Hawaii can start to use policy judgments and can start to articulate a compelling state interest that is advanced by reducing the – So Hawaii can – even though I may have a right to self-defense under the Second Amendment, Hawaii can tell me outside my home how I can be safest in exercising that right. And how everyone can be safest. Yes, Your Honor. Let me ask you a procedural question. We're here at a preliminary injunction stage. And of course, as you know, sometimes the preliminary injunction order is really the end of the case. That once we issue our decision, then a summary judgment quickly follows. Your opponent indicates that you'd like to do some discovery. What do you anticipate in this case? Regardless of the outcome of this preliminary injunction appeal, what do you anticipate happening in the district court? I think that my opponent is probably correct. Limited discovery and then summary judgment motions. But not an immediate summary judgment. You'd want some discovery? Your Honor, I have only handled this appeal. So I'm not – I don't know – Others may want discovery. Yeah, others may want discovery. And I'm just not aware of the outcome. We're talking about a lot of empirical evidence and so forth. And the question is whether you want discovery to put that in. You want discovery against the plaintiff. I mean – Yeah. I mean, this is probably expert – this is probably expert material that would – Yeah. I just wanted to get a feel for it. Yeah. Best to inform the court. Okay. If the court has no further questions, thank you. No further questions. Thank you, counsel. Mr. Holcomb, you have some reserve time? Yes. Thank you. Just very briefly, this interest balancing and so on and so forth is simply not what Hawaii's done. Hawaii's absolutely banned this. How do we know that from the record? Well, Your Honor, there is discovery in the record. I'm sorry I have it in my notes over there. But where they have given us – we've asked them for – list all the ones that the licenses that you have issued. And they show that they issue for open carry. And she's correct that if you're an armored truck driver or if you are a security guard, they will give you an open carry permit. But you have to be engaged in that occupation. So they've given us a chart that shows for all the armored car drivers. Yes, I've seen that. I thought you were saying you're absolutely prohibition that they aren't interpreting. So go ahead. But my point is for regular civilians who have requested a permit through this application process, the numbers are zero throughout the entire chart. So no one has ever demonstrated that theirs is an exception. I'm kind of reading between the lines. But I'm hearing you say if the court – unless we were – and I'm just talking hypothetically. Unless we were to speak specifically on the Second Amendment and say that they got the law wrong, you lose downstairs as well. This isn't a make or break for you right here. This is important. I don't know if it's a make or break. Because my expectation – and I know it was strange to do so at a preliminary injunction stage. But we had asked to stay it pending Mr. Gurra's case. Because I would have preferred, frankly, that this court make the decision and in our case follow, win or lose. So you brought the preliminary injunction motion? I did. That's why we're here. So you make your bet hard, right? You shot yourself in the foot. That's right. But I wanted to also point out – Back in the home, we presume. Was that with or without a permit, Judge? All right. The second thing very quickly I wanted to point out about this is my opponents mentioning these sensitive places. And I would submit that, yes, Hawaii can restrict sensitive places. But why don't they do that? This is a complete ban. And that's the problem. And as for the evidence, importantly as well, according to the Lujan case, we are still in the pleading phase. So I would submit that the declaration of Mr. Baker and the factual allegations in our complaint, although admittedly pro lix as Judge Kaye found, you should evaluate those very carefully and read them very broadly. Do you agree with counsel's statement that the right changes when you get off your property? I agree that – well, first I would note that I don't read that from Heller. I read Heller to say you cannot absolutely ban to keep and or to bear arms. Okay? But it does say you can regulate these sensitive places. You can probably do time, manner, and scope regulations. So necessarily that would occur outside your home. So where the regulations do exist, they would have to be reasonable. But, yes, they would be outside the home. But as for extending beyond the threshold of your front door and having a different level of scrutiny apply, I don't know that I agree with that specifically, because it's still just as fundamental of a right. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision. And before adjourning, on behalf of the panel, the Court would like to express its appreciation to counsel on all sides for an exceptionally helpful series of arguments in all three cases. Thank you very much. Thank you.
judges: O'scannlain, Thomas, Callahan